INTERNATIONAL CHARTER MORTGAGE CORPORATION, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE PUERTO RICO, SECCIÓN DE BARRANQUITAS, recurrido.

*Número:* O-81-64 *Resuelto:* 10 de abril de 1981

*José L. Arias Juárez y Eugene F. Hestres,* abogados de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En 1973 José Luis Gierbolini Santiago y su señora madre Juana María Santiago, ambos solteros, compraron a la Corporación de Renovación Urbana y Vivienda de por mitad proindivisa para cada uno, un solar de 352.93 m/c en el que tenían edificada una casa vivienda, de concreto, radicada en Coamo. El 26 septiembre, 1980 y por escritura Núm. 330 otorgada en San Juan ante el notario Lic. Juan A. Hernández Ramírez, para entonces casado el co-propietario José L. Gierbolini con Margarita Berly, los referidos madre e hijo vendieron dicho inmueble por $30,000 a un comprador que en el título de compraventa se identifica como "La Sociedad Legal de Gananciales compuesta por José Luis Gierbolini Santiago y su esposa Margarita Berly", ambos mayores de edad y vecinos de Coamo. En escritura Núm. 331 de igual fecha y notario dichos cónyuges José L. Gierbolini y Margarita Berly emitieron un pagaré hipotecario por $29,000 a favor de International Charter Mortgage y en garantía de esa obligación constituyeron primera hipoteca a favor de su acreedora. Presentadas las susodichas escrituras Núms. 330 y 331 el Registrador de la Propiedad denegó la inscripción por contravenir la de compraventa el Art. 1347 del Código Civil, 31 L.P.R.A. sec. 3772 que prohíbe las ventas entre marido y mujer. (¹)

El recurso gubernativo de la International Charter Mortgage requiere una concreción precisa, hasta donde pueda alcanzar la técnica civilista, de la naturaleza jurídica de la sociedad de gananciales. Nuestra jurisprudencia contiene numerosos precedentes en que se ha declarado que la sociedad de

---

(¹) Art. 1347 Código Civil—

"El marido y la mujer no podrán venderse bienes recíprocamente, sino cuando se hubiese pactado la separación de bienes, o cuando hubiera separación judicial de los mismos bienes, autorizada con arreglo al Capítulo 275 de este título." 31 L.P.R.A. sec. 3772.

gananciales es una entidad jurídica separada y distinta de los cónyuges que la componen (*Rovira Tomás* v. *Srio. de Hacienda,* 88 D.P.R. 173, 175-6 (1963)); mas en *Torres* v. *A.F.F.* 96 D.P.R. 648, 653 (1968), reflejando ya la influencia del criterio de *propiedad en mano común (zur gesammte Hand)* [2] que más adelante discutimos, declaró: "Pero [esta] es una entidad económica familiar *sui generis,* de características especiales, que no tiene el mismo grado de personalidad jurídica de las sociedades ordinarias o entidades corporativas, sino, . . . 'otro menor adaptado a su razón de ser y a la interpenetración entre los patrimonios personales y el social que hay en ella; una personalidad *atenuada . . .'*." (Énfasis suplido.)

Castán Tobeñas [3] apunta que el concepto de esta sociedad ha tenido su más preclaro desarrollo y moderna orientación en la jurisprudencia inmobiliaria de la Dirección General en los Registros que sintetiza en las siguientes afirmaciones: aun cuando los bienes de la sociedad conyugal pertenecen a marido y mujer conjuntamente, no es posible confundir la comunidad de gananciales con una *copropiedad de tipo romano,* en primer lugar porque la relación personal de los cónyuges es en aquel supuesto tan íntima, que modifica su estado civil, mientras en la copropiedad por cuotas los copartícipes se hallan ligados tan solo por la relación patrimonial; en segundo término, porque el régimen jurídico del matrimonio impone normas de disposición, uso y administración de los bienes, así como especiales relaciones de responsabilidad, subrogación y distribución que no tienen razón de ser en la copropiedad ordinaria, y, en fin, porque la extinción de la sociedad de gananciales se halla regida por el carácter personal y de

---

(2) Sedimento de historia dejado por el reino visigodo en España, que no sucumbió al Derecho romano ni a la jurisprudencia árabe, contrarias ambas a esta institución. Castán, *Derecho Civil Español,* 8va ed., 1966, T.5., Vol. 1, pág. 251.

(3) *Derecho Civil Español, Común y Foral,* supra, pág. 256 y ss.

orden público de la unión, en tanto que la acción para pedir la división de la cosa común es característica de la comunidad normal de bienes. Puntualiza que la resolución de 12 mayo 1924, ([4]) excluye igualmente la tesis de la *persona jurídica*, aduciendo que en el orden hipotecario no existen inscripciones especialmente extendidas a favor de la sociedad de gananciales como persona jurídica independiente de las personas físicas que la han constituido, sino que los bienes y derechos aparecen inscritos a nombre del marido o de la mujer, con ciertas circunstancias o datos que permiten su atribución a un grupo patrimonial de fines particulares y régimen característico.

■ Rechazando la doctrina que construye la sociedad de gananciales como una verdadera sociedad, las autoridades ([5]) destacan las siguientes diferencias entre ellas: a) la sociedad es un contrato que nace de la voluntad de las partes, y, en cambio, la sociedad conyugal, aunque puede constituirse expresamente en capitulaciones, se forma generalmente por el hecho del matrimonio, sin necesidad de estipulación. b) La sociedad puede celebrarse entre dos o más personas de cualquier sexo; en cambio, la sociedad de gananciales de Derecho común sólo puede constituirse entre marido y mujer, por ser consecuencia del matrimonio. c) La sociedad comienza y termina cuando convienen las partes; en cambio, la de gananciales comienza y termina tan solo cuando se dan las circunstancias previstas en la legislación. d) En la sociedad ordinaria, las partes pueden alterar o modificar sus estipulaciones en cualquier tiempo; la de gananciales, una vez celebrado el matrimonio, es irrevocable. e) En la sociedad, la participación en los beneficios es tan esencial, que es nula aquella en que se estipule que uno de los socios se los lleve todos: en cambio,

---

([4]) Confirmada por Resoluciones de 12 dic. 1935; 8 nov. 1944; y 20 oct. 1958.

([5]) F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ediciones Pirámide, pág. 146. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1967, T. IV, Vol. 1, págs. 595–596.

en la sociedad de gananciales esta exigencia no es necesaria; la mujer puede renunciar su derecho a los gananciales anticipadamente, en cuyo caso éstos corresponden en su totalidad al marido. f) En la sociedad, los beneficios se reparten en la forma estipulada, y en defecto de estipulación, a prorrata de los aportes de cada socio. En la sociedad conyugal, en cambio, los gananciales se dividen por mitad, cualquiera que sea el monto de los aportes de cada cónyuge y aunque uno de ellos no haya aportado nada. g) Falta la disolubilidad por voluntad unilateral del socio, o la posibilidad de asociar a un tercero. Hay que añadir que en la sociedad de gananciales la existencia o no de ganancias es accidental; el fin de lucro está excluido por un propósito y destino superior: hacer posible la realización más perfecta de los fines del matrimonio; la inversión en común por los cónyuges de su capacidad de trabajo y los frutos de sus bienes propios para fomentar una economía que sirva al cumplimiento de sus deberes matrimoniales recíprocos y los de ambos para con los hijos, y para dividir ganancias, si las hubiere, llegado el caso de disolución de la sociedad. *Cf. Torres* v. *A.F.F.*, supra a la pág. 653.

Con énfasis en la realidad de que nuestros textos legales de Derecho civil e hipotecario mantienen las respectivas titularidades de ambos cónyuges, que no se eliminan con la sociedad conyugal, Castán Tobeñas[6] la configura como una comunidad germánica o en mano común, "ya que marido y mujer son, indistintamente, titulares de un patrimonio, sin que ninguno de ellos tenga un derecho actual a una cuota que pueda ser objeto de enajenación, ni pueda dar lugar a la causa de división y sin que sea posible determinar concretamente la participación de los cónyuges en ese patrimonio, sin una previa liquidación". "Ciertamente", comenta, "el Código Civil no reconoce la concepción de la propiedad en mano común en su forma más pura y genuina, que exigiría la gestión con-

---

[6] *Op. cit.*, pág. 258.

junta de los dos cónyuges; (⁷) pero esta circunstancia no basta para excluir la figura jurídica de que se trata . . . ." *Derecho Civil Español, Común y Foral*, supra, pág. 259. Lo mismo opinan Bonet, Batlle, Fernández Martín-Granizo, Roca Sastre y otros, y es el criterio especialmente sostenido por la Dirección General de los Registros. (⁸)

 La sociedad legal de gananciales no absorbe la personalidad individual de los cónyuges que la integran. No ocurría tal eclipse de personalidad, como hemos visto bajo el régimen unitario en que el marido era el órgano de gestión

---

(⁷) Nuestro Código Civil tiene esa gestión desarrollada a plenitud desde que por Ley Núm. 51 de 21 mayo, 1976 fueron rescritos los Arts. 91 y 93 del Código, 31 L.P.R.A. secs. 284 y 286, con nuevo texto que ordena:

Art. 91

"Ambos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo estipulación en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad.

"Las compras que con dichos bienes haga cualquiera de los cónyuges serán válidas cuando se refieran a cosas destinadas al uso de la familia o personales de acuerdo con la posición social y económica de ésta. Disponiéndose que cualquiera de los cónyuges podrá efectuar dichas compras en efectivo o a crédito.

"Los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges. Nada de lo antes dispuesto se interpretará a los efectos de limitar la libertad de los futuros cónyuges de otorgar capitulaciones matrimoniales." 31 L.P.R.A. sec. 284.

Art. 93

"Salvo lo dispuesto en la sec. 284 de este título, cualquiera de los cónyuges podrá representar legalmente a la sociedad conyugal. Cualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales." 31 L.P.R.A. sec. 286.

La infusión en el Derecho patrio de esta acción conjunta de los cónyuges para la realización con plena eficacia de cualquier acto jurídico de alcance dispositivo, la concurrencia de ambos cónyuges en todos los actos de gestión extraña al sistema tradicional castellano, completa la figura de propiedad en mano común, y priva de todo argumento la disidencia de Alfonso de Cossío, el más significado contradictor de la doctrina. Puig Brutau, *op. cit.*, págs. 601–2.

(⁸) Puig Brutau, *op. cit.*, pág. 598.

y administración; y se aleja aún más en nuestro actual régimen subjetivo, derogado el Art. 1312 (que reservaba al marido la administración) ; y el inciso 3 del Art. 1215 que limitaba la capacidad de contratación de la mujer casada; exigiéndose por el nuevo Art. 91 (31 L.P.R.A. sec. 284) el consentimiento escrito de ambos para enajenar u obligar a título oneroso los bienes muebles e inmuebles. Es diáfana la transparencia del velo entre la sociedad de gananciales y las personas que la integran.

■ Subsistente e inconfundible la personalidad individual de los cónyuges integrantes de la sociedad, con mayor relieve la mujer hoy igualada en derechos dentro de la sociedad conyugal, la compraventa objeto de este recurso fue una venta recíproca entre marido y mujer vedada por el Art. 1347 del Código Civil.

*Con estos antecedentes y fundamentos, la calificación recurrida queda confirmada.*

El Juez Asociado Señor Negrón García concurre en el resultado sin opinión.